COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| MICHAEL JOHN RICE, |  | No. 08-09-00024-CR |
|  | § |  |
| Appellant, |  | Appeal from |
|  | § |  |
| v. |  | Criminal District Court No. 2 |
|  | § |  |
| THE STATE OF TEXAS, |  | of Dallas County, Texas |
|  | § |  |
| Appellee. |  | (TC # F-0851474-I) |
|  | § |  |

# O P I N I O N

Michael John Rice appeals from the trial court's order placing him on deferred adjudication community supervision. Appellant entered a negotiated plea of guilty to possession of less than one gram of cocaine. The trial court found that the evidence substantiated Appellant's guilt, but the court deferred further proceedings and placed Appellant on community supervision for three years. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

Following Appellant's indictment for possession of cocaine, he filed a motion to suppress. Both the arresting officer, James Coddington, and Appellant testified at the hearing on the motion. Coddington and his partner were on routine patrol at around 11 p.m. when Coddington observed a vehicle run a red light. Coddington activated his emergency lights and attempted to pull it over. The vehicle did not respond immediately and Coddington had to turn on his siren and use the air horn several times before the driver pulled to the side of the road. When Coddington and his partner walked towards the vehicle, he saw the driver leaning forward and frantically moving his hands by the left side of the door panel. He warned his partner that the driver might be reaching for a weapon.

The officers could not easily see into the vehicle because the windows had a dark tint and only the driver's window was open. The driver ignored Coddington's repeated instructions to put his hands on the steering wheel and he continued to reach for the area by the door. Finally, the driver put his hands on the steering wheel and he rolled down the windows so the officers could see inside. There was a female passenger in the front seat and two males in the back seat. Seeing that they were outnumbered, Coddington called for backup.

Coddington asked the driver for his license and insurance. The driver did not produce these items but instead questioned Coddington why he had been stopped. At the same time, Appellant, who was seated behind the driver, began talking to Coddington. Coddington believed that Appellant, by "chattering back and forth" was attempting to divide his attention in an effort to "pass something over" on him or to buy time so they could do something to him. Appellant continued to talk even when Coddington asked him to be quiet. Coddington noticed Appellant was extremely nervous and kept shifting in his seat.

Coddington had been trained to remove the occupants of a vehicle to eliminate possible threats when dealing with a situation where officers are outnumbered. Coddington removed the driver first and instructed him to go to the other side of the car so the other officer could pat him down for weapons. Because the driver had been moving his hands in an area near Appellant, Coddington next removed Appellant from the rear seat to prevent any possible threat from that side of the car. Coddington spoke with Appellant briefly and determined he was intoxicated. Appellant seemed extremely nervous during this encounter. The officer informed Appellant he would conduct a pat-down search for weapons and asked whether "he had anything on him" such as weapons, needles, knives, or anything that's going to cut, poke, or hurt him. Coddington routinely asks this question any time he is going to conduct a pat-down search. Appellant said he did not have any

weapons, but he had a baggie of cocaine in his right front pocket. Surprised by Appellant's admission and in an effort to confirm that he had heard correctly, Coddington asked him what he had just said. When Appellant repeated his statement, Coddington placed Appellant under arrest and removed the baggie of cocaine from his pocket.

Appellant contradicted portions of Coddington's testimony. First, he testified that the driver, Jacob DeLyle, did not run a red light and pulled over immediately after the officer turned on his siren. DeLyle did not make any furtive gestures and was not moving around in the vehicle when the officers approached. He also denied making any statements to Coddington while the officer was talking to the driver. Finally, Appellant said that when Coddington asked if he had any weapons on him, Appellant simply replied that he did not and refused to give the officer permission to search him. Coddington proceeded with the pat-down and when he felt the baggie in Appellant's pocket, Coddington pulled on the pocket asking "What's this?" Appellant told him that it was a baggie of cocaine. The trial court denied the motion to suppress and Appellant subsequently entered his guilty plea.

## MOTION TO SUPPRESS

In his sole issue, Appellant challenges the trial court's denial of his motion to suppress. He argues that his removal from the vehicle and the pat-down search of his pockets and person violated the Fourth Amendment and Article I, Section 9 of the Texas Constitution because it was without reasonable suspicion, probable cause, or a warrant.

### *Waiver of Argument Under Texas Constitution*

We will restrict our review to the Fourth Amendment claim because Appellant has included his Article I, Section 9 argument in the same issue and his brief does not explain how the Texas Constitution's protection differs from the protection provided by the United States Constitution.

State and federal constitutional claims should be argued in separate grounds, with separate substantive analysis or argument provided for each ground. *Muniz v. State*, 851 S.W.2d 238, 251-52 (Tex.Crim.App. 1993); *Heitman v. State*, 815 S.W.2d 681, 690-691 n.23 (Tex.Crim.App. 1991). Because Appellant has inadequately briefed the issue related to Article I, § 9, the issue is not preserved for our review. *See Muniz*, 851 S.W.2d at 251-52; TEX.R.APP.P. 38.1(i).

*Standard of Review*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review *de novo* application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex.Crim.App. 2005).

When the trial court has not made a finding on a relevant fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Herrera v. State*, 241 S.W.3d 520, 527 (Tex.Crim.App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006).

*Removal of Defendant from Vehicle
and the Search of Appellant's Pocket*

The Fourth Amendment to the United States Constitution protects persons against "unreasonable searches and seizures." U.S. CONST. amend. IV. In general, law enforcement officers may not search or seize an individual absent a warrant based on probable cause. *Wright v. State*, 7

S.W.3d 148, 150 (Tex.Crim.App. 1999). Law enforcement personnel may conduct a limited search for weapons of a suspect's outer clothing, even in the absence of probable cause, where an officer reasonably believes that the suspect is armed and dangerous. *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex.Crim.App. 2000), *citing Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). An officer conducting a weapons search must justify his decision to search with specific articulable facts which, taken together with rational inferences from those facts, would cause a reasonably prudent person to believe his safety or that of others was in danger. *Terry*, 392 U.S. at 21-22, 88 S.Ct. at 1880. The purpose of a limited search after an investigatory stop is not to discover evidence of a crime, but to allow the peace officer to pursue investigation without fear of violence. *Carmouche*, 10 S.W.2d at 329.

Whether a Fourth Amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex.Crim.App. 2000), *quoting Maryland v. Macon*, 472 U.S. 463, 470-71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985). The officer need not be absolutely certain that the individual is armed. *O'Hara*, 27 S.W.3d at 551. The issue is whether a reasonably prudent person would justifiably believe that his safety or that of others was in danger. *Id.*

Appellant does not challenge the initial stop or the subsequent detention of the vehicle's occupants. Instead, he limits his argument to the validity of his removal from the car and the search of his pocket. It has been recognized that danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. *Maryland v. Wilson*, 519 U.S. 408, 414, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997). Consequently, an officer making a traffic stop may order passengers to get out of the car pending completion of the stop. *Maryland v.*

*Wilson*, 519 U.S. at 415, 117 S.Ct. at 886; *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex.Crim.App. 1997). Appellant's removal from the vehicle during the traffic stop did not violate the Fourth Amendment.

With respect to the pat-down search, the trial court heard the conflicting testimony at the suppression hearing and, as the trier of fact, could have believed Officer Coddington's testimony that Appellant admitted he had a baggie of cocaine in his pocket before Coddington performed the pat-down search. Upon hearing this admission, Coddington had probable cause to search Appellant's pocket and remove the cocaine. *See Priego v. State*, No. 08-04-00314-CR, 2005 WL 2241007, at *3 (Tex.App.--El Paso Sept. 15, 2005, no pet.)(officer had probable cause to search defendant's pocket where defendant told officer, prior to pat-down search, that he had cocaine in his pocket); *Nuttall v. State*, 87 S.W.3d 219, 223 (Tex.App.--Amarillo 2002, no pet.)(where defendant admitted to officer that he had baggie of drugs on his person, probable cause existed to justify search). For this reason alone, the trial court did not err in denying Appellant's motion to suppress.

Even if the trial court believed Appellant's testimony that he made the admission *after* the pat-down search, we find that the pat-down search was lawful under *Terry* because the evidence supports a finding that a reasonably prudent officer would have been concerned for his safety under these circumstances. The traffic stop occurred late at night, the officers initially could not see into the vehicle because the windows were tinted and only the driver's window was down, and the officers were outnumbered. The Supreme Court has specifically recognized "the inordinate risk confronting an officer as he approaches a person seated in an automobile." *Pennsylvania v. Mimms*, 434 U.S. 106, 110, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977). When Coddington approached the vehicle, the driver would not obey the officer's repeated instructions to put his hands on the steering wheel, but instead kept moving his hands frantically in the area between the door and the seat. The

officer believed Appellant and the driver were trying to divide his attention by speaking to him at the same time with the intention of buying time so they could do something to him. Coddington also noticed that Appellant appeared "very nervous" and kept shifting in his seat. Under these circumstances, Coddington was concerned the driver or Appellant might have a weapon so he first removed the driver to be frisked for weapons and then Appellant. The evidence supports a finding that a reasonably prudent officer would be concerned for his safety under these circumstances. We overrule the sole issue on appeal and affirm the judgment of the trial court.

June 30, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)